# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### MIDDLE DIVISION

| | | |
|---|---|---|
| **ALABAMA MUNICIPAL INSURANCE CORPORATION,** | ) ) ) | |
| **Garnishor,** | ) ) | |
| **v.** | ) ) | **Case No.: 4:17-CV-0864-VEH** |
| **SCOTTSDALE INSURANCE COMPANY,** | ) ) ) | |
| **Garnishee.** | ) ) | |

---

## <u>MEMORANDUM OPINION</u>

This action is a removed garnishment[1], originally filed by the Garnishor, Alabama Municipal Insurance Corporation ("AMIC"), against the Garnishee, Scottsdale Insurance Company ("Scottsdale"), in the Circuit Court of St. Clair County, Alabama. (Doc. 1-3 at 4-8). It was removed to this Court on May 25, 2017. (Doc. 1). AMIC seeks to garnish insurance proceeds it contends that Scottsdale owes, as indemnity for its insured, in connection with a state court judgment entered against its insured.

---

[1] A garnishment action to collect a judgment is a separate civil action which is removable. *Webb v. Zurich Ins. Co.*, 200 F.3d 759, 760 (11th Cir. 2000) (citing *Butler v. Polk*, 592 F.2d 1293 (5th Cir.1979)).

The case is now before the Court on the Cross-Motions for Summary Judgment filed by the parties. (Docs. 21, 22). For the reasons stated herein, summary judgment will be **GRANTED** in favor of Scottsdale, and against AMICO.

## I.    STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment is proper if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 2265 (1986) ("[S]ummary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.") (internal quotation marks omitted). The party requesting summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323, 106 S. Ct. at 2553. Once the moving party has met its burden, Rule 56(c) requires the non-moving party to go beyond the pleadings in answering the movant.[2] *Id.* at 324, 106

---

[2] When *Celotex* was decided FED. R. CIV. P. 56(e) encompassed this express requirement, but now this concept is covered by the language provided for under FED. R. CIV. P. 56(c).

S. Ct. at 2553. By its own affidavits – or by the depositions, answers to interrogatories, and admissions on file – it must designate specific facts showing that there is a genuine issue for trial. *Id.*

The underlying substantive law identifies which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d. 202 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000). Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510. A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* If the evidence presented by the non-movant to rebut the moving party's evidence is merely colorable, or is not significantly probative, summary judgment may still be granted. *Id.* at 249, 106 S. Ct. at 2511.

How the movant may satisfy its initial evidentiary burden depends on whether that party bears the burden of proof on the given legal issues at trial. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). If the movant bears the burden of proof on the given issue or issues at trial, then it can only meet its burden on summary judgment by presenting *affirmative* evidence showing the absence of a genuine issue

of material fact – that is, facts that would entitle it to a directed verdict if not controverted at trial. *Id.* (citing *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1438 (11th Cir. 1991)). Once the moving party makes such an affirmative showing, the burden shifts to the non-moving party to produce "significant, probative *evidence* demonstrating the existence of a triable issue of fact." *Id.* (emphasis added).

For issues on which the movant does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways. *Id.* at 1115-16. First, the movant may simply show that there is an absence of evidence to support the non-movant's case on the particular issue at hand. *Id.* at 1116. In such an instance, the non-movant must rebut by either (1) showing that the record in fact contains supporting evidence sufficient to withstand a directed verdict motion, or (2) proffering evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency. *Id.* at 1116-17. When responding, the non-movant may no longer rest on mere allegations; instead, it must set forth evidence of specific facts. *Lewis v. Casey*, 518 U.S. 343, 358, 116 S. Ct. 2174, 2183, 135 L. Ed. 2d 606 (1996). The second method a movant in this position may use to discharge its burden is to provide affirmative *evidence* demonstrating that the non-moving party will be unable to prove its case at trial. *Fitzpatrick*, 2 F.3d at 1116. When this occurs, the non-movant must rebut by offering *evidence* sufficient to withstand a directed verdict at trial on the

material fact sought to be negated. *Id.*

"The standard of review for cross-motions for summary judgment does not differ from the standard applied when only one party files a motion, but simply requires a determination of whether either of the parties deserves judgment as a matter of law on the facts that are not disputed." *S. Pilot Ins. Co. v. CECS, Inc.*, No. 1:11 CV 3863 AT, 2014 WL 4977805, at *2 (N.D. Ga. Sept. 12, 2014) (citing *Am. Bankers Ins. Group v. United States,* 408 F.3d 1328, 1331 (11th Cir.2005)). "The Court must consider each motion on its own merits, resolving all reasonable inferences against the party whose motion is under consideration." *Id.* "The Eleventh Circuit has explained that '[c]ross-motions for summary judgment will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed.'" *Id. (quoting United States v. Oakley,* 744 F.2d 1553, 1555 (11th Cir.1984)). "Cross-motions may, however, be probative of the absence of a factual dispute where they reflect general agreement by the parties as to the controlling legal theories and material facts. *Id.* (quoting *Oakley*, 744 F2d at 1555–56).

## II.     FACTS

### A.     <u>Stipulated Facts</u>

The parties have stipulated as follows:

1.    On November 9, 2015, the City of Pell City, Alabama ("the City") and Phoenix Services of Alabama, LLC ("Phoenix") entered into a contract ("the Contract") wherein Phoenix agreed "to remove or demolish [a] smokestack from [the City's] property" and to "remove all debris, trash, and other materials resulting from the demolition of the smokestack." A copy of the Contract appears in the record as document 10-1.

2.    Timothy Manley Phifer ("Phifer"), as "Member/Manager" of the "Timothy Manley Phifer Trust," signed the Contract on behalf of Phoenix.

3.    On November 24, 2015, Phifer was performing the work under the Contract.

4.    The City loaned Phifer a 2014 Komatsu tractor ("the tractor") for use in performing the work.

5.    The work that Phifer performed included using explosives in an effort to demolish the smokestack.

6.    After using explosives, most of the smokestack was still standing. Phifer then used the tractor to perform work on the smokestack. While Phifer was in the cab of the tractor and operating the tractor, the smokestack collapsed onto and

damaged the tractor. Phifer was unhurt.

7.  The accident described in ¶ 6 was filmed and can be seen in the YouTube videos titled "Pell City implodes historic Avondale Mills smokestack" (https://youtu.be/e-slDDFNdx8) and "Pell City smokestack collapses on excavator" (https://youtu.be/Nql7apYXl5k).

8.  The City's insurer, AMIC, paid $123,750 for the damage to the tractor.

9.  On May 18, 2016, AMIC, as subrogee of the City, filed suit against Phifer, the Timothy Manley Phifer Trust ("Phifer Trust"), and Phoenix in the Circuit Court of St. Clair County, Alabama (hereafter "the state court"), alleging that AMIC paid the City for the damage to the City's tractor and that AMIC was entitled to recover against Phifer, Phifer Trust, and Phoenix for their negligence or wantonness in causing the damage and/or for their failure to indemnify the City for the damage. A copy of AMIC's complaint appears in the record as document 10-2.

10. On February 23, 2017, the state court entered a default judgment in favor of AMIC against Phifer, Phifer Trust, and Phoenix for $123,750 in compensatory damages and $1,320.62 in costs. A copy of the state court's order rendering the default judgment appears in the record as document 10-3.

11. Scottsdale issued a policy of commercial general liability insurance (policy no.

CPS2362764) to "Timothy Phifer d/b/a Phoenix Services of Alabama," effective November 13, 2015, until it was canceled on December 28, 2015 ("the Policy"). The Policy was in effect at the time of the accident described in ¶ 6 above and shown in the videos referenced in ¶ 7 above. A copy of the Policy appears in the record as document (doc. 10-4).

12.     At the time of the accident described in ¶ 6 above and shown in the videos referenced in ¶ 7 above, the tractor was loaned by the City to Phifer.

13.     At the time of the accident described in ¶ 6 above and shown in the videos referenced in ¶ 7 above, the tractor was in Phifer's care, custody, or control.

14.     At the time of the accident described in ¶ 6 above and shown in the videos referenced in ¶ 7 above, the tractor was "mobile equipment" as defined in the Policy.

   **B.      Relevant Policy Language**

The Policy states that Scottsdale agrees to "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." (Doc. 10-4 at 8, ¶1.a.). The "insured" in this case is "Timothy Phifer d/b/a Phoenix Services of Alabama." (Doc. 10-4 at 3). The Policy defines "property damage" as including "[p]hysical injury to tangible property." (Doc. 10-4 at 22, ¶17). The Policy only covers property damage "caused by an

8

'occurrence.'" (Doc. 10-4 at 8, ¶1.b.(1)). The Policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Doc. 10-4 at 22, ¶13).

The policy also contains these relevant exclusions:

This insurance does not apply to:

\* \* \*

**b.    Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.

\* \* \*

**h.    Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

\* \* \*

(2) The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

\* \* \*

**j.    Damage To Property**

"Property damage" to:

* * *

(3) Property loaned to you; [and/or]

(4) Personal property in the care, custody or control of the insured[.]

(Doc. 10-4 at 9, 11-12, ¶¶2.b., 2.h., 2.j).

## III.  ANALYSIS

As noted previously, this is a garnishment action in which AMICO claims that, under the Policy, Scottsdale must indemnify Phifer, the Phifer Trust, and Phoenix in connection with the default judgment entered against them in the state court case. This is the only basis for AMICO's claim that Scottsdale is indebted to Phifer, the Phifer Trust, and Phoenix, and thus, subject to garnishment. Scottsdale argues that either the Policy's "Mobile Equipment" exclusion, or its "Damage to Property" exclusion, or both, exclude coverage in this case, and, therefore, it is not indebted to Phifer, the Phifer Trust, and Phoenix. Accordingly, as with a typical declaratory judgment action, the Court must determine whether there is coverage. If there is not, there is nothing to garnish. The Court will examine each of the cited exclusions in turn.

### A.  <u>The Mobile Equipment Exclusion</u>

The Alabama Supreme Court has stated:

Policy exclusions are to be narrowly interpreted, and, when an ambiguity exists in the language of an exclusion, " ' "the exclusion will be construed

so as to limit the exclusion to the narrowest application reasonable under the wording." ' " *Porterfield v. Audubon Indem. Co.*, 856 So.2d 789, 806 (Ala.2002) (quoting *Carpet Installation & Supplies of Glenco v. Alfa Mut. Ins. Co.*, 628 So.2d 560, 562 (Ala.1993), *quoting in turn St. Paul Mercury Ins. Co. v. Chilton–Shelby Mental Health Ctr.*, 595 So.2d 1375, 1377 (Ala.1992)). *See also American States Ins. Co. v. Martin*, 662 So.2d 245, 247 (Ala.1995) ("Exclusions are to be interpreted as narrowly as possible, so as to provide maximum coverage for the insured, and are to be construed most strongly against the insurance company that drafted and issued the policy.").

*Mid-Continent Cas. Co. v. Advantage Med. Elecs., LLC*, 196 So. 3d 238, 244 (Ala.

2015). Very recently, the Alabama Court of Civil Appeals wrote:

> [T]he law gives guidance regarding the construction of exclusions within an insurance policy.
>
> > "[E]xceptions to coverage must be interpreted as narrowly as possible in order to provide maximum coverage to the insured. However, courts are not at liberty to rewrite policies to provide coverage not intended by the parties. *Newman v. St. Paul Fire & Marine Insurance Co.*, 456 So.2d 40, 41 (Ala. 1984). In the absence of statutory provisions to the contrary, insurance companies have the right to limit their liability and write policies with narrow coverage. *United States Fidelity & Guaranty Co. v. Bonitz Insulation Co. of Alabama*, 424 So.2d 569, 573 (Ala. 1982). If there is no ambiguity, courts must enforce insurance contracts as written and cannot defeat express provisions in a policy, including exclusions from coverage, by making a new contract for the parties. *Turner v. United States Fidelity & Guaranty Co.*, 440 So.2d 1026, 1028 (Ala. 1983)."

[*Johnson v. Allstate Ins. Co.*, 505 So.2d 362, 365 (Ala. 1987)]; *see also Nationwide Mut. Ins. Co. v. Thomas*, 103 So.3d 795, 803 (Ala. 2012).

*Geico Indem. Co. v. Bell*, --- So. 3d ---, No. 2150745, 2017 WL 942598, at *2–3 (Ala. Civ. App. Mar. 10, 2017).

As noted above, the Policy excludes coverage for property damage arising from the use of "mobile equipment . . . in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity." (Doc. 10-4 at 11, ¶h.(2)). The parties agree that the tractor in this case was "mobile equipment." Scottsdale argues that "Phifer was using the tractor in <u>demolition activity</u> when the tractor was damaged. Therefore, the damage to the tractor arose out of the use of mobile equipment in demolition activity, and the exclusion bars coverage for AMIC's judgment." (Doc. 23 at 9) (emphasis added). In response, AMIC argues that the word "demolition" as it is used in the exclusion, does not mean the type of activity that Phifer was doing–tearing down a smokestack.

In Alabama, "*noscitur a sociis*, has been embraced . . . as an aid in construing ambiguous . . . language." *State Superintendent of Educ. v. Alabama Educ. Ass'n*, 144 So. 3d 265, 284 (Ala. 2013). That doctrine holds that where general and specific words which are capable of an analogous meaning are associated one with the other, they take color from each other, so that the general words are restricted to a sense analogous to that of the less general. *Ex parte Capstone Bldg. Corp.*, 96 So. 3d 77, 85 (Ala. 2012) (internal quotations and citations omitted). AMIC argues that, using this doctrine, the

Court must consider the word "demolition" in the context of the terms surrounding it in the Policy (*i.e.* "prearranged racing, speed . . . or stunting activity"). If considered in light of these other terms, AMIC argues, "demolition" means something closer to an activity "involving cars and racing and speed and stunting activity. It is no stretch to harken back to the classic amusement park ride of bumper cars to understand the extent the word 'demolition' plays in this exclusion." (Doc. 21 at 4).

Scottsdale cites to the following definition of "demolition" and "demolish" from Merriam-Webster: "tear down, raze . . . to break to pieces: smash . . . to do away with : destroy." https://www.merriam-webster.com/dictionary/demolish. Scottsdale claims that the existence of this "plain and definite meaning" means that the doctrine of *noscitur a sociis* is inapplicable. (Doc. 24 at 15) (citing *Callen v. Callen*, 257 Ala. 226, 228, 58 So. 2d 462, 464 (1952) ("Appellant seeks to apply the principle of *ejusdem generis* and *noscitur a sociis*. Those principles merely furnish an aid to construe an ambiguity in an instrument and do not furnish an iron bound rule."); *Illinois Nat. Ins. Co. v. Castro*, 887 So. 2d 281, 284 (Ala. Civ. App. 2003) (where language of exclusion is clear there is no need to use doctrine of *noscitur a sociis*)). However, just because a word can be defined does not mean that it is not ambiguous in the context in which it is used. *See, e.g., Ex parte Emerald Mountain Expressway Bridge, L.L.C.*, 856 So. 2d 834, 843 (Ala. 2003) ("[U]nder the doctrine of 'noscitur a sociis,' the words 'tax'

and 'fee' [in the statute] must be restricted to taxes or fees related solely to the licensing of private toll roads or toll bridges."). Applying the doctrine of *noscitur a sociis,* and keeping in mind the Court's duty to construe an exclusion as narrowly as possible in order to provide maximum coverage to the insured, the Court determines that the word "demolition" in this exclusion means something more like a stunt or racing activity, such as a demolition derby – where drivers deliberately ram their vehicles into one another – not the demolition of a smokestack.[3] The mobile equipment exclusion is, therefore, inapplicable.

## B. The Personal Property Exclusion

As noted above, the Policy excludes coverage for "Property damage" to

---

[3] Furthermore, the Court finds it highly unlikely that the parties intended to generally exclude coverage for "demolition" under any circumstances. The declaration, schedule of locations, and supplemental declarations pages of the Policy all clearly state that the insured is a "Blasting Operation." (Doc. 10-4 at 3, 5, 7). Blasting is a form of "demolition." *See*, Ala. Code § 37-15-2 (defining "blasting"as "[t]he use of an explosive device for the excavation of earth, rock, or other material or the <u>demolition</u> of a structure.") (emphasis added). That being said, the Court does not agree that the exclusion at issue would render the coverage illusory, as AMIC suggests. (Doc. 21 at 5-7). "When limitations or exclusions completely contradict the insuring provisions, insurance coverage becomes illusory. Alabama law does not " 'countenance such illusory "coverage." *Shrader v. Employers Mut. Cas. Co.*, 907 So. 2d 1026, 1033 (Ala. 2005). In the instant case, even if the exclusion applies as Scottsdale suggests, there would still be coverage for demolition, just not demolition involving mobile equipment. Accordingly, the coverage would be just "limited" not "completely contradicted" by the exclusion. *See, Nautilus Ins. Co. v. Mobile Area Mardi Gras Ass'n, Inc.*, No. CIV.A. 10-0025-W, 2010 WL 4269184, at *7 (S.D. Ala. Oct. 27, 2010) (Steele, J.) ("Certainly it is true that Alabama courts do not allow insurers to extend coverage with one hand, then eradicate it with the other. . . . But that is not what Nautilus's Policy does; rather, that Policy extends coverage with one hand, then narrows that coverage with the other. This is neither illusory coverage nor otherwise improper under Alabama law.") (citations omitted).

"[p]roperty loaned to [the insured]," and/or "[p]ersonal property in the care, custody or control of the insured." (Doc. 10-4 at 11-12, ¶¶2.j). In the instant case, there is no dispute that the tractor was loaned to Phifer and was in his care, custody, and control when it was damaged. (Doc. 10 at 3, ¶¶12, 13). However, the terms "property," and "personal property" are not defined in the Policy. AMIC argues that, under these circumstances, and since it is undisputed that the tractor was "mobile equipment," it cannot also be "property" or "personal property."[4]

---

[4] In its initial motion, AMIC's argument only focused on whether the tractor can be defined as "personal property," not "property" in general. *See* doc. 21 at 1 ("Because the tractor is 'mobile equipment' it is separately defined from 'personal property,' and, thus, not included in the 'personal property' exclusion and there is no provision in the 'mobile equipment' exclusion that excludes the tractor from coverage."); doc. 21 at 2 ("[T]his exclusion has no provision that 'Mobile Equipment' that is damaged while in the 'care, custody, or control' of the insured is excluded. It matters not, under this exclusion, that the tractor was in the care, custody, and control of Phifer. So unless otherwise covered by the exclusion, 'Mobile Equipment' that is damaged while in the care, custody, or control of the insured is a covered claim."); doc. 21 at 7 ("[B]ecause Scottsdale separately and specifically defined the tractor as 'Mobile Equipment,' it removed the tractor from the broader category of 'personal property.'"); doc. 21 at 8 ("Pell City's tractor is not 'personal property' as provided for in Scottsdale's policy. Rather, Scottsdale specifically defined Pell City's tractor in its policy as 'Mobile Equipment.' If Scottsdale wanted to define a tractor to also be 'personal property' it had the terms and ability to do so."); doc. 21 at 8 ("Scottsdale could have defined a tractor as 'personal property' or could have defined 'personal property' in the first place. It did neither. The phrase 'personal property' is undefined and Scottsdale cannot use that undefined term to narrowly restrict coverage. Also Scottsdale does not have the ability to change the definition of the tractor – it specifically defined as 'Mobile Equipment' – to 'personal property.' Pell City's tractor is and only ever will be 'Mobile Equipment' as defined in Scottsdale's policy."). In its reply brief, Scottsdale's argument, for the most part, shifts to arguing, more broadly, that the tractor does not fall within the "damage to property" exclusion. *See* doc. 25 at 1 ("Because under Scottsdale's policy, the 2014 Komatsu tractor was defined as 'mobile equipment' it is separately defined outside the 'Damage to Property' exclusion."); doc. 25 at 3 ("It matters not, under this exclusion, that the tractor was loaned to Phifer. Because Scottsdale separately and specifically defined the tractor as 'Mobile Equipment,' it removed the tractor from the broader category of 'Damage to property' in the separate exclusion."); doc. 25 at 3 ("Pell City's tractor is not 'damage to property' [sic] as

Ironically, if the Court accepts AMIC's argument, it must grant summary judgment in favor of Scottsdale. Scottsdale agreed to "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." (Doc. 10-4 at 8, ¶1.a.). The Policy defines "property damage" as, in pertinent part, "[p]hysical injury to tangible property." (Doc. 10-4 at 22, ¶17) (emphasis added). If, as AMIC argues, "Pell City's tractor is and only ever will be 'Mobile Equipment' as defined in Scottsdale's policy," and thus it is not "property" (*see* doc. 25 at 4), there is no coverage for the claim in this case.[5] Any other

_____

provided for in Scottsdale's policy."); *but see*, doc. 25 at 4 ("If Scottsdale wanted to define a tractor to also be 'property' and subject to the 'Damage to Property' exclusion, it had the terms and ability to do so."); doc. 25 at 4 ("Scottsdale could have listed 'Mobile Equipment' as subject to the 'Damage Property' exclusion, or it could have defined 'property' to include a tractor in the first place. It did neither. The phrase 'property' is undefined and Scottsdale cannot use that undefined term to narrowly restrict coverage. Scottsdale does not have the ability to change the definition of the tractor – it specifically defined as 'Mobile Equipment' – to 'property.' Pell City's tractor is and only ever will be 'Mobile Equipment' as defined in Scottsdale's policy.").

[5] In document 25, AMICO writes:

17. Nowhere in the remainder of this definition is "personal property" defined or mentioned. (Hence one of the major problems with attempting to enforce that exclusion to include the separately defined "mobile equipment.") So, Scottsdale has no policy authority and/or case authority that if something is not "personal property" then it cannot be "property damage."

18. Scottsdale cannot complain that AMIC's argument is "self-defeating" because it did not define "personal property" to include "mobile equipment" nor did it define "property damage" to only include damage to "personal property." Again, Scottsdale had the terms and had the ability to do so.

19. Property damage, under Scottsdale's definition, can occur to both "Mobile Equipment" as well as "personal property." Just because one is not the other does

16

conclusion could only be reached through "strained or twisted reasoning," something

the Court cannot do when construing an insurance contract under Alabama law. *See*

*Lambert v. Coregis Ins. Co.*, 950 So. 2d 1156, 1162 (Ala. 2006).

Regardless, the Court does not agree that the failure to define "property" and

"personal property" is dispositive. In Alabama,

> the mere fact that a word or a phrase used in a provision in an insurance
> policy is not defined in the policy does not mean that the word or phrase
> is inherently ambiguous. If a word or phrase is not defined in the policy,
> then the court should construe the word or phrase according to the
> meaning a person of ordinary intelligence would reasonably give it.

*Safeway Ins. Co. of Alabama v. Herrera*, 912 So. 2d 1140, 1143 (Ala. 2005). Giving

the Policy its plain and ordinary meaning, the tractor in the instant case is clearly

"property" and "personal property."[6] AMIC has cited no language in the Policy, nor

legal authority (and the court is aware of none), which prohibits the tractor from being

defined simultaneously as property, personal property, and mobile equipment.[7]

---

not negate the definitions applicability to both.

(Doc. 25 at 6-7). The court does not understand this argument. Regardless, it does not seem to
address whether the tractor is "property" so as to provide coverage.

[6] The dictionary defines "Property" as "something owned or possessed."
https://www.merriam-webster.com/dictionary/property. "Personal property" is defined as
"property other than real property consisting of things temporary or movable: chattels."
https://www.merriam-webster.com/dictionary/personal %20property.

[7] AMIC argues for the application of the doctrine of *nosictur a sociss* to this exclusion as
well, but does not explain which word it contends has a "doubtful" meaning, nor which associated
words should be consulted. (*See* doc. 21 at 7-8; doc. 25 at 3).

This approach is consistent with that of several cases which the Court finds persuasive on this issue. For example, in *Progressive Paloverde Ins. Co. v. Bishop*, No. 1:11-CV-00290-TWP-DK, 2012 WL 2399607, at *3 (S.D. Ind. June 25, 2012) (Pratt, J.), the policy excluded coverage for "bodily injury or property damage arising out of the ... use of any vehicle ... while being used to carry persons or property for compensation or a fee, including, but not limited to ... pickup or delivery of ... food[.]" *Bishop*, 2012 WL 2399607, at *1 (internal quotations and citations omitted).[8] The policy defined "auto" and "covered auto," but not "vehicle." The defendant argued that "vehicle" must therefore have a separate and distinct meaning from "auto" or "covered auto." Since the car at issue was clearly an "auto," the defendant argued that it could not also be a "vehicle" under the exclusion. *Id.* at *3. The Court was "not persuaded," holding that "[g]iving the term its plain and ordinary meaning, 'any vehicle' is a broad term that plainly includes [the] vehicle [in this case]. A contrary ruling would be the product of strained semantics." *Id.*[9]

---

[8] The insured was delivering pizzas for her employer at the time of the accident.

[9] The court also wrote:

On this point, *Neal v. American Family Mut. Ins. Co.*, 945 F.Supp. 1198 (S.D.Ind.1998) is particularly instructive. In that case, Judge Dillin rejected the insured's argument that an exclusion using the term "motor vehicle" was ambiguous because it was broader than the word "car," which was defined in the policy liability provision. *See id.* at 1201 ("We do not believe the use of the phrase 'motor vehicle' in the exclusion clause rather than the words 'car' and 'utility

18

Similarly, in *S. Farm Bureau Cas. Ins. Co. v. Hammond*, No. 2:15-CV-02107, 2016 WL 1178796 at *2 (W.D. Ark. Mar. 24, 2016) (Holmes, J.), Southern Farm Bureau argued that a four-wheeler was not "self-propelled farm machinery," a phrase not defined by the policy in that case, because it also fit the definition of an "automobile," which <u>was</u> defined. The court wrote: "This argument is a *non-sequitur*. Even assuming that the four-wheeler might meet the policy's definition of an automobile . . . there is no reason to believe that an automobile cannot also be self-propelled farm machinery." *Hammond*, 2016 WL 1178796, at *2 (W.D. Ark. Mar. 24, 2016). The Court held that:

> the phrase "self-propelled farm machinery" is unambiguous and . . . the four-wheeler [is] "self-propelled farm machinery" under a plain reading of the policy. . . . [A] common-sense interpretation of the phrase would clearly include a four-wheeler, which is self-propelled.

*Id.* at *2.

Finally, in *Dauthier v. Pointe Coupee Wood Treating Inc.*, 560 So. 2d 556, 557 (La. Ct. App. 1990), a forklift being used to unload a truck "became unbalanced, and "[t]hree men . . . attempted to balance the forklift by climbing onto its rear." *Dauthier*, 560 so. 2d at 557. Thereafter, the forklift tilted, throwing the men to the ground and

---

trailer' as used in the liability provisions make American Family's meaning any less clear....").

*Bishop*, 2012 WL 2399607, at *3.

killing one of them. The policy in question excluded coverage for "[b]odily injury or property damage resulting from the movement of property by a mechanical device (other than a hand truck) not attached to the truck." *Id.* (internal quotations omitted). Elsewhere, the policy defined "mobile equipment" to include forklifts. The Court held that the exclusion applied, writing:

> Although "mechanical device" is a very broad term[,] the terms of the contract give no indication that the parties did not intend that this exclusionary provision would be given very broad effect. Clearly, a forklift fits within the generally prevailing meaning of the term "mechanical device". See, W. McKenzie & H. Alston Johnson, III, 15 *Louisiana Civil Law Treatise, Insurance Law and Practice*, § 66, p. 175 (1986). The fact that a forklift is also classified as "mobile equipment" under the terms of the policy is of no consequence when interpreting the exclusionary clause in question. A forklift can be classified as both a "mechanical device" and "mobile equipment" without producing absurd or inconsistent results.

*Id.* at 558.

It is true that "[e]xceptions to coverage must be interpreted as narrowly as possible in order to provide maximum coverage for the insured, and must be construed most strongly against the company that drew the policy and issued it." *Porterfield*, 856 So. 2d at 806 (internal quotations and citations omitted). However, when, as in this case, "there is no ambiguity in the terms of an insurance contract, the language must be enforced as written, and courts cannot defeat express provisions in a policy, including exclusions from coverage, by making a new contract for the parties." *Id.* at

806. Here, because the tractor was "property" and/or "personal property" that was loaned to Phifer, and was in his care, custody, and control when it was damaged, paragraphs 2.j.(3) and 2.j.(4) of the Policy apply to exclude coverage.

## IV. CONCLUSION

Based on the foregoing, summary judgment is due to be granted in favor of Scottsdale, and against AMICO, on the issue of coverage. A Final Order will be entered.[10]

**DONE** this 8th day of November, 2017.

**VIRGINIA EMERSON HOPKINS**
United States District Judge

---

[10] Because the Court has determined that coverage is excluded, it need not address Scottsdale's argument that, to the extent that the underlying judgment arises out of a breach of contract claim, coverage is excluded. (Doc. 23 at 10-13). Furthermore, the Court need not address whether Phifer Trust is an insured. (Doc. 23 at 14). The court notes that AMIC expressly declined to argue these points. (Doc. 25 at 7).